UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA BARRETT,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. EDCV 10-1358 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Brenda Barrett filed this action on September 9, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on September 29 and October 1, 2010. (Dkt. Nos. 7, 9.) On May 23, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

///

///

///

///

## I.

## PROCEDURAL BACKGROUND

On November 30, 2007, Barrett filed an application for disability insurance benefits and supplemental security income alleging a disability onset date of June 1, 2004. Administrative Record ("AR") 9. The application was denied initially and upon reconsideration. *Id.* Barrett requested a hearing before an Administrative Law Judge ("ALJ"). AR 90. On October 22, 2009, the ALJ conducted a hearing at which Barrett and a vocational expert testified. AR 22-70. On December 16, 2009, the ALJ issued a decision denying benefits. AR 6-18. On August 11, 2010, the Appeals Council denied the request for review. AR 1-3. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Barrett met the insured status requirements through September 21, 2006. AR 11.

Barrett has the following severe impairments: asthma, bipolar disorder, polysubstance abuse, and limited vision in one eye. *Id.* She has the residual functional capacity to perform "less than a full range of light work." AR 13. She "is limited to occasional performance of postural activities; no ladders, ropes, scaffolds, hazardous machinery, or heights; [she] needs to work in a clean air environment; she can only perform non-complex work that is object oriented; she is limited to non public work with occasional contact with others; and [she is limited to] work that permits [her] to only see colors in one eye." *Id.*

Barrett is unable to perform her past relevant work. AR 17. However, "there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as paramutual ticket taker, officer helper and routing clerk. AR 17-18.

### C. Treating Psychiatrist

Barrett argues the ALJ improperly rejected the opinions of her treating psychiatrist, Dr. Eklund and her treating therapist, Ms. Miller, both of whom treated her at the San Bernardino County Department of Behavioral Health.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations omitted and internal quotations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) the length of the treatment relationship and frequency of examination;[1] (2) the nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) the consistency with the record as a whole; and (5) the specialty of the physician providing the opinion. *See Id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ found that Barrett's treatment records "do not contain objective evidence that establishes [she] has been unable to perform work activity for any twelve month period of time." AR 15. In addition, none of the treatment providers opined that Barrett was unable to work for any twelve month period of time. AR 16. The ALJ noted that Barrett's "records and testimony has established [she]

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

was able to perform work activity in 2007 and 2008. The claimant testified she stopped working due to her move not because of an inability to perform work activity." AR 15. The Global Assessment of Functioning ("GAF") scores from both providers were "inconsistent with the claimant's records and activities of daily living." *Id.*

The ALJ's reasons for discounting the opinions of Dr. Eklund and Ms. Miller are supported by substantial evidence. Dr. Eklund filled out a mental status examination form on January 9, 2008. AR 259-60. Barrett complained of recent paranoia, insomnia, anxiety, and auditory hallucinations. She told Dr. Eklund she could not work because she could not leave the house and felt confused. AR 259. She had been off of her medications for one year. *Id.* Dr. Eklund found that her appearance, behavior and speech were within normal limits. AR 260. Her mood was depressed and anxious, she had auditory hallucinations, and her thought process was tangential and paranoid/persecutory. *Id.* He diagnosed her with schizoaffective disorder, bipolar type, and a history of marijuana dependence in sustained remission. *Id.* Her current GAF score was 40. *Id.* A GAF score of 31 to 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV") at 34. Dr. Eklund did not provide specific opinions as to Barrett's ability to perform work-related activities.

Previously, on November 29, 2007, Ms. Miller filled out intake forms. AR 266-72, 298-305. She noted Barrett was not taking medications at that time. AR 303. Ms. Miller diagnosed mood disorder, not otherwise specified, and cannabis abuse. She opined Barrett had a GAF score of 45, and a high GAF score of 50

over the past year. AR 298, 300. A GAF score of 41 to 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Ms. Miller did not provide specific opinions as to Barrett's ability to perform work-related activities.

On October 22, 2009, Barrett testified that she last worked in 2007 to 2008 as an "inpatient homecare" provider or home attendant taking care of a patient in his home. AR 25-26, 30, 64. She did not know how many days a week, how many months she worked[3] or how much money she made at this job, but earnings records indicated she made $6,318.00 in 2007 and $8,977.00 in 2008. AR 25-26, 31, 155. Her duties included laundry, cooking and cleaning. AR 32. She drove the patient and lifted more than 20 pounds while working. AR 32-33. She stopped working at this job because she moved. AR 33.

Barrett testified she had seen Dr. Eklund for four years. AR 49-50. She used to hear voices, and the last time she heard them was when she was off her medication. AR 51. She takes Seroquel and Paxil, which seem to help. Her psychological condition has improved with medication. AR 46. She cannot work because she freezes up around people; she does not like being around people; and she does not "function right." AR 34. However, she did not know what would keep her from working in a job that did not require her to be around people. AR 36. She thought she would "be okay" doing a job similar to putting shoes in a box all day long, working by herself but around other people.[4] AR 36-37.

The ALJ properly found that the Dr. Eklund's January 9, 2008 opinion and

---

[3] Barrett also testified that in 2008 she worked "probably five or six months maybe. I'm not sure exactly." AR 26.

[4] As noted above, the ALJ determined that Barrett could performed only non-public, non-complex work that is object oriented and limited to occasional contact with others. AR 13. He gave great weight to the opinions of Dr. Schrift to make this determination. AR 16-17.

Ms. Miller's November 29, 2007 opinion were inconsistent with Barrett's earnings records and her testimony indicating she could and, in fact, did work in 2007 and 2008 providing "inpatient homecare." AR 25-26, 30, 155. She testified that she did laundry, cooked, cleaned, and lifted more than 20 pounds while working. AR 32-33. She stopped working because she moved, not because she was unable to perform the work. AR 33. The ALJ provided specific and legitimate reasons to reject the opinions of Dr. Eklund and Ms Miller and their GAF scores as "only a snapshot in time and not an indication of [her] overall mental health over a twelve month period. The ALJ did not err.

### D. Lay Witness Testimony

Barrett argues the ALJ failed to provide germane reasons for rejecting the lay witness testimony of her friend, Ms. Gaspelin, who completed a third party function report on August 13, 2008. AR 188-95.

The ALJ summarized Ms. Gaspelin's report and concluded that it essentially "parrot[s] [Barrett's] function report and testimony." AR 14. The ALJ found her report credible only to the extent it was consistent with his decision. *Id.* He found that she was Barrett's long-time friend and "as such" biased, and was not a medical doctor or vocation expert qualified to provide expert evidence as to Barrett's impairments or ability to perform work activities. AR 14-15.

An ALJ must take into account lay witness testimony concerning a claimant's ability to work unless the ALJ expressly determines not to and gives reasons germane to each witness for doing so. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007); *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006). However, when an ALJ has provided clear and convincing reasons for rejecting the claimant's testimony, and the lay witness' testimony was similar to the claimant's testimony, "it follows that the ALJ also gave germane reasons for rejecting the [lay witness'] testimony." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Barrett does not challenge the ALJ's

7

credibility finding as to Barrett. A comparison of Ms. Gaspelin's report with Barrett's report and testimony supports the ALJ's finding that Ms. Gaspelin's report essentially parrots Barrett's report and testimony. Accordingly, any error was harmless.[5] *See Stout*, 454 F.3d at 1056 ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: September 13, 2011

                                                _____
                                                ALICIA G. ROSENBERG
                                                United States Magistrate Judge

---

[5] Contrary to the ALJ's finding, lay witness testimony may be introduced to show the severity of a claimant's impairment(s) and how it affects his ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, Bruce's wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities."). The ALJ's reliance on bias also was not appropriate. "[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.'" *Valentine*, 574 F.3d at 694 (citation omitted).